Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| CARLOS ALBERTO VÁZQUEZ VÁZQUEZ<br><br>Recurrida<br><br>v.<br><br>SUHEILY MARRERO NIEVES<br><br>Peticionaria | TA2026CE00744 | *CERTIORARI*<br>Procedente del Tribunal de Primera Instancia, Sala de Bayamón, Sala Familia y Menores<br><br>Civil núm.: BY2022RF00426<br><br>Sobre: Divorcio (Ruptura Irreparable) |

Panel integrado por su presidente el juez Hernández Sánchez, el juez Rivera Torres y el juez Marrero Guerrero

**Rivera Torres, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico, el 29 de junio de 2026.

Comparece ante este tribunal apelativo, la Sra. Suheily Marrero Nieves (señor Marrero Nieves o peticionaria), mediante el recurso de *certiorari* de epígrafe solicitándonos que revisemos la *Resolución Interlocutoria* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI), el 28 de abril de 2026, notificada el mismo día. Mediante este dictamen, el foro primario resolvió que la custodia de la menor BKVM sería ostentada por el Sr. Carlos Alberto Vázquez Vázquez (señor Vázquez Vázquez o recurrido).

Por los fundamentos que expondremos a continuación, expedimos el auto de *certiorari* solicitado y modificamos la determinación recurrida.

**I.**

La señora Marrero Nieves y el señor Vázquez Vázquez son los padres de la menor BKVM. Según los documentos que obran en el expediente apelativo, tras la ruptura matrimonial de las partes el 22

de junio de 2022, se le otorgó, de forma provisional, la custodia de la menor a la señora Marrero Nieves.[1]

En lo pertinente y tras varios incidentes procesales, el 15 de marzo de 2024, se presentó un Informe Social,[2] el cual fue objetado por la señora Marrero Nieves en cuanto a las recomendaciones del plan de custodia allí sugerido.[3] Por su parte, el recurrido expresó estar conforme con las recomendaciones emitidas.[4] No obstante, señaló que del referido informe surgía información suficiente para solicitar la custodia monoparental de la menor BKVM. A pesar de ello, indicó que, en consideración a los deseos de su hija y en beneficio de esta, no se oponía a que se otorgara la custodia compartida, siempre y cuando se cumplieran las recomendaciones incluyendo las terapias sugeridas.

En atención a lo anterior, el 18 de junio de 2024, se celebró una vista para discutir el referido informe.[5] Evaluados los argumentos de ambas partes, el 16 de julio del mismo año, el TPI emitió una Resolución concediendo la custodia compartida de la menor BKVM a la peticionaria y al señor Vázquez Vázquez. Ello sería en semanas alternas, desde el viernes a la hora de salida del colegio hasta el siguiente viernes a la hora de entrada al colegio.

Posteriormente, el 27 de noviembre de 2024, se suscitó un incidente que tuvo como consecuencia la suspensión de la relación paternofilial ante una solicitud presentada por la peticionaria contra el señor Vázquez Vázquez.[6] Durante este periodo, la menor no quería relacionarse con su padre por el incidente. Así las cosas, el TPI refirió el asunto a la Unidad Social para que fuese investigado.[7]

---

[1] Véase, el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC TPI), Entrada núm. 25.

[2] SUMAC TPI, Entrada núm. 82. Se registró y archivó el 18 de marzo de 2024.

[3] SUMAC TPI, Entrada núm. 88.

[4] SUMAC TPI, Entrada núm. 93.

[5] SUMAC TPI, Entrada núm. 99.

[6] SUMAC TPI, Entrada núm. 114. A raíz del incidente, el 3 de diciembre de 2024, se expidió una Orden de Protección en contra del recurrido.

[7] SUMAC TPI, Entrada núm. 116. Cabe precisar que el TPI tuvo que emitir dos (2) órdenes para que se cumpliera con las citas de la trabajadora social.

Luego, el 8 de julio de 2025, mediante una moción, el recurrido le informó al TPI que la peticionaria había desistido de la solicitud de orden de protección.[8] Asimismo, añadió que las relaciones paternofiliales se habían restablecido de manera gradual, por acuerdo entre las partes. No obstante, alegó que, a pesar de que la menor solicitó relacionarse con él, la peticionaria se opuso e interfirió para que ello no ocurriese. Indicó que la menor se encontraba en su hogar y que esta deseaba permanecer allí durante el mes de julio. Alegó que la señora Marrero Nieves se oponía a que la menor y su padre compartieran, por lo cual solicitó que se autorizaran las relaciones paternofiliales y que la menor permaneciera con el hasta el 31 de julio de 2025.

Por su parte, el 9 de julio de 2025, la peticionaria replicó y aseguró no tener objeción en que la menor compartiera con el recurrido durante el mes de julio.[9] No obstante, indicó que le preocupaba que se cumpliera con los compromisos de las clínicas deportivas de las cuales participaba la menor; así como el regreso a clases.

En atención a lo anterior, el 8 de agosto de 2025, el TPI emitió una Orden, notificada el mismo día, en la cual reiteró que la custodia de la menor era compartida.[10] Asimismo, señaló que el acuerdo al que llegaron las partes, luego de haber sido suspendidas las relaciones paternofiliales de manera provisional, fue pactado sin contar con el aval del tribunal, por lo cual el referido a la Unidad Social resultó inoficioso. Respecto a la menor y a las visitas con ambos padres, señaló lo siguiente:

> Ahora [el] demandante informa que la menor no quiere regresar con la madre y por otra parte la demandada indica que el padre no quiere devolverla.
>
> De la moción de la Sra. Marrero esta acepta que est[a] actitud de la menor es una de manipulación porque un

---

[8] SUMAC TPI, Entrada núm. 125.
[9] SUMAC TPI, Entrada núm. 127.
[10] SUMAC TPI, Entrada núm. 131.

día no quiere ver al padre y otro a la madre. Ciertamente la edad de la menor es un criterio a considerar, se encuentra en plena adolescencia.

Dicho esto, el padre ahora solicita su custodia de la menor y la madre solic[i]ta que esta le sea devuelta. Legalmente, este Tribunal la concedió de forma compartida y hasta que no se establezca de otra manera, ese es el estado de derecho, por lo que las partes deberán cumplir con la Resolución dictada el 16 de julio de 2024. **La menor no puede seguir dictando las pautas a su conveniencia**.

Del mismo modo, no es suficiente que el padre indique que la madre "a pesar de las ges[t]iones realizadas por el demandante para que se llevara a cabo" la parte demandada nunca cump[lió]. Se refiere a las ayudas a la menor y a que estos se inte[grara]n a ese proceso. La custodia fue concedida a AMBOS, no solo a la madre. Y nos preguntamos, [¿]por qué el padre no acudió al Tribunal para que se cumpliera con esta orden tan importante para la menor? [Énfasis nuestro]

A tales efectos, el TPI les ordenó a las partes evidenciar la contratación de un psicólogo escogido por mutuo acuerdo para que atendiera a la menor, en cumplimiento con la Resolución dictada el 16 de julio de 2024. Añadió que ambos progenitores debían integrarse al proceso de ayuda para su hija y que informaran sobre el cumplimiento con la orden relativa a las terapias para la comunicación entre ellos. Especificó que el caso no sería enviado nuevamente a la Unidad Social a menos que, a pesar de dar cumplimiento con la Orden y con todas las recomendaciones, ello no fuese suficiente para superar tanto la conducta de la menor como la de ambos progenitores.

Así las cosas, el 3 de septiembre de 2025, la peticionaria informó que el señor Vázquez Vázquez había obtenido una orden de protección a favor de la menor, en su contra.[11] A base de lo cual solicitó que se señalara una urgente vista para atender las alegaciones planteadas por el recurrido en su solicitud de orden de protección.

Luego, el 9 de diciembre de 2025, la señora Marrero Nieves presentó una moción en la que informó que, luego de celebrada una

---

[11] SUMAC TPI, Entrada núm. 132.

vista en sus méritos, se determinó no expedir la orden de protección a favor de la menor BKVM. Añadió que, como resultado, se ordenó el cierre y archivo del caso referente a la orden de protección.

El 17 de diciembre de 2025, el recurrido replicó mediante un escrito intitulado *Moción [en] Cumplimiento*. En este informó los trámites realizados para cumplir con las órdenes del TPI relacionadas a las terapias psicológicas ordenadas tanto a los progenitores como a la menor. En específico, señaló que la menor tenía programada una cita con la psicóloga Melissa Barrios Falcón (psicóloga Barrios Falcón) para el 18 de diciembre de 2025.

Añadió que actualmente la menor se encontraba bajo su custodia, debido a unas alegadas situaciones entre esta y la señora Marrero Nieves que provocaron que BKVM no quisiera regresar a la casa de su madre. Sostuvo que, a pesar de estar consciente de que la custodia de la menor era compartida, le preocupaba la salud emocional de la menor. A tales efectos, solicitó que se le otorgara de manera provisional la custodia monoparental de la menor hasta que se iniciara el proceso de terapia psicológica.

Atendidos los escritos de las partes, el 30 de diciembre de 2025, el foro primario emitió una Orden, notificada el mismo día, en la que reiteró que **la custodia de la menor era compartida**.[12] Por tanto, ordenó a ambas partes a que cumplieran con lo establecido anteriormente respecto a los acuerdos de custodia compartida. Asimismo, indicó que, de haber alguna situación emocional que afectara a la menor, esta debía ser atendida por la psicóloga y; de haber alguna recomendación en contrario, debía ser informada al tribunal.

Luego, el 15 de enero de 2026, la peticionaria informó que al momento no se había dado cumplimiento a las órdenes del tribunal

---

[12] SUMAC TPI, Entrada núm. 147.

respecto a la custodia compartida.[13] Asimismo, alegó que la menor era influenciada por el señor Vázquez Vázquez, quien supuestamente le proveía información relacionada a la pensión alimentaria y a la custodia. A tales efectos, solicitó que se le ordenara al recurrido cumplir con lo ordenado anteriormente y que se abstuviera de continuar inmiscuyendo a la menor en los asuntos relacionados a los adultos. Además, acompañó su escrito de una captura de pantalla de mensajes compartidos entre ella y la menor.

Posteriormente, el 21 de enero de 2026, la Supervisora de la Unidad Social, Marie Gordillo Rivera, presentó el informe de Intervención Psicológica preparado por el Dr. José A. Rivera Maldonado. De este surge que se recomendó la continuación de terapias, especialmente entre madre e hija.

El 3 de febrero de 2026, el recurrido replicó y alegó que la menor confrontaba graves y serios problemas para relacionarse con la peticionaria y que se negaba a compartir con esta. Sostuvo que debido a ello y a lo recomendado en el informe social procuró servicios psicológicos para a la menor.[14] Añadió que BKVM había acudido a su primera cita con la psicóloga Barrios Falcón y que tenía cita de seguimiento pautada para el 19 de febrero de 2026. Asimismo, indicó que la psicóloga Barrios Falcón manifestó que presentaría al tribunal un informe sobre el asunto. Sin embargo, dicho informe no había sido recibido.

El recurrido reiteró su preocupación por la salud emocional de la menor, por lo cual solicitó mantener la custodia monoparental provisional. Esto sería hasta que la menor lograra avances en la terapia psicológica o esta culminara. Sostuvo que dicha petición respondía al mejor interés y bienestar de la menor. Por otra parte,

---

[13] SUMAC TPI, Entrada núm. 148.
[14] SUMAC TPI, Entrada núm. 152.

este negó las alegaciones referentes a que le proveía información a la menor sobre el litigio.

Atendidos los escritos de las partes, mediante una orden emitida y notificada el 4 de febrero de 2026, el tribunal revisado reiteró que lo más importante era atender el estado emocional de la menor.[15] Aseveró que la estabilidad de BKVM se lograría con la intervención de la psicóloga. Por consiguiente, señaló que el señor Vázquez Vázquez debía mantener informados tanto a la peticionaria como al tribunal sobre el progreso de las terapias. Asimismo, la señora Marrero Nieves debía estar disponible para participar de las terapias, de así ser requerido, y para que se le brindara información sobre el proceso.

Posteriormente, el 23 de abril de 2026, el recurrido presentó una *Moción Sobre Revisión de Pensión Alimentaria y Reclamación de Gastos Suplementarios.[16]* Mediante esta, indicó que el tribunal nunca emitió determinación alguna que cambiara la custodia compartida de la menor BKVM. Sostuvo que, luego del incidente ocurrido en agosto de 2025, se le había otorgado la custodia monoparental de la menor. Añadió que la orden de protección solicitada tras dicho incidente no se expidió y que, el 5 de diciembre de 2025, se determinó no extender la misma. No obstante, alegó que la menor se había negado a regresar con la peticionaria. Asimismo, señaló que había solicitado que se le permitiera continuar con la custodia monoparental hasta que se recibieran recomendaciones diferentes de la psicóloga que atendía a la menor.

Por otra parte, indicó que desde que ostentaba la custodia monoparental de BKVM había descontinuado el pago de la pensión a favor de esta. Además, alegó que la peticionaria no había realizado aportación alguna para cubrir la manutención, ni los gastos

---

[15] SUMAC TPI, Entrada núm. 153.
[16] SUMAC TPI, Entrada núm. 156.

extraordinarios de BKVM. Señaló que, al presente, había incurrido en gastos ascendentes a $5,000 por concepto de colegio, deporte y salud, para los cuales la peticionaria tampoco había aportado. A tales efectos, solicitó que, de conformidad con la ley, se determinara una pensión alimentaria a favor de BKVM.

Atendida la solicitud del señor Vázquez Vázquez, el 28 de abril de 2026, el TPI emitió y notificó la *Resolución Interlocutoria* objetada mediante la cual determinó que la custodia de BKVM sería ostentada por el recurrido.[17] Asimismo, refirió el caso a la Examinadora de Pensiones Alimenticias para la fijación de la pensión.

En desacuerdo, el 7 de mayo de 2026, la peticionaria presentó una *Urgente Moción en Solicitud de Reconsideración.*[18] En esta, alegó que la única razón por la que la menor vivía única y exclusivamente con el recurrido era debido a que este había imposibilitado las relaciones maternofiliales, conforme a los acuerdos previos de custodia compartida. Añadió que, por tal motivo, presentó anteriormente una solicitud de desacato a las órdenes del tribunal, en contra del señor Vázquez Vázquez. Sostuvo que este, además de incumplir con los acuerdos de custodia compartida, tampoco había cumplido con la orden de mantenerla informada tanto a ella como al tribunal respecto al progreso en las terapias psicológicas de la menor.

En ese sentido, adujo que se comunicó con la oficina de la psicóloga Barrios Falcón, donde se le informó que la última cita de la menor había sido en marzo de 2026. Asimismo, señaló que le indicaron que no había otra cita pautada para BKVM y que el tratamiento había sido interrumpido. Añadió que advino en conocimiento de que la menor no asistía con regularidad al colegio,

---

[17] SUMAC TPI, Entrada núm. 157.
[18] SUMAC TPI, Entrada núm. 163.

motivo por el cual sostuvo una reunión con una de las maestras. Esta última le indicó a la peticionaria que la menor tenía veintisiete (27) ausencias en el expediente y que el aprovechamiento académico de BKVM era cuestionable. Para sustentar sus alegaciones, acompañó el escrito con la minuta de la reunión que sostuvo con la maestra de la menor. En atención a lo anterior, solicitó que el tribunal reconsiderara y se mantuviera la ley del caso.

Atendida la reconsideración, el 11 de mayo de siguiente, el TPI emitió una Orden, notificada al próximo día, en la cual reiteró que el recurrido continuaría ostentando la custodia de la menor.[19] A su vez, aclaró que las determinaciones sobre custodia nunca son finales, toda vez que no constituyen cosa juzgada. No obstante, señaló que lo informado por la señora Marrero Nieves eran señalamientos significativos, por lo cual ordenó al señor Vázquez Vázquez que presentara certificación de tratamiento de la menor y la situación con las ausencias y aprovechamiento académico de esta. Asimismo, le ordenó que informara el estatus de la terapia familiar recomendada por el Dr. José A. Rivera Maldonado.

Inconforme, la señora Marrero Nieves acude ante este foro intermedio mediante el recurso de *certiorari* de epígrafe imputándole al foro primario la comisión del siguiente error:

> **ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA, AL VARIAR SUMARIAMENTE UNA DETERMINACIÓN SOBRE CUSTODIA SIN LA CELEBRACIÓN DE VISTA Y PROVEERSE LAS GARANTÍAS DEL DEBIDO PROCESO DE LEY Y PERMITIRLES A LAS PARTE[S] COMPARECER Y SER OÍDA[S].**

El 12 de junio de 2026, emitimos una *Resolución* concediéndole a la parte recurrida hasta el 22 siguiente para expresarse. El 22 de junio, el señor Vázquez Vázquez cumplió con lo ordenado. Así, nos damos por cumplidos y, a su vez, decretamos perfeccionado el recurso.

---

[19] SUMAC TPI, Entrada núm. 166.

Analizados los escritos de las partes y el expediente apelativo; así como estudiado el derecho aplicable, procedemos a resolver.

## II.

**Auto de *Certiorari***

El recurso de *certiorari* es el vehículo procesal discrecional disponible para que un tribunal apelativo revise las resoluciones y órdenes interlocutorias de un tribunal de inferior jerarquía. Regla 52.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1; *García v. Padró*, 165 DPR 324, 334 (2005). Todo recurso de *certiorari* presentado ante este foro apelativo deberá ser examinado primeramente al palio de la Regla 52.1 de las de Procedimiento Civil, *supra*. Dicha regla limita la autoridad y el alcance de la facultad revisora de este foro apelativo sobre órdenes y resoluciones dictadas por el foro de primera instancia, revisables mediante el recurso de *certiorari*. La referida norma dispone como sigue:

> Todo procedimiento de apelación, certiorari, certificación, y cualquier otro procedimiento para revisar sentencias y resoluciones se tramitará de acuerdo con la ley aplicable, estas reglas y las reglas que adopte el Tribunal Supremo de Puerto Rico.
>
> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, **solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo.** No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando **se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia**. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 de este apéndice sobre los errores no perjudiciales. Regla 52.1 de Procedimiento Civil, supra. [Énfasis Nuestro].

Por tanto, el asunto que se nos plantea en el recurso de *certiorari* deberá tener cabida bajo alguna de las materias reconocidas en la Regla 52.1 de las de Procedimiento Civil, *supra*. Ello, debido a que el mandato de la mencionada regla dispone expresamente que solamente será expedido el auto de *certiorari* para la revisión de remedios provisionales, interdictos, denegatoria de una moción de carácter dispositivo, admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia y en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.

Así, pues, para determinar si debemos expedir un auto de *certiorari* debemos determinar primeramente si el asunto que se trae ante nuestra consideración versa sobre alguna de las materias especificadas en la Regla 52.1 de las de Procedimiento Civil, *supra*. Sin embargo, aun cuando el asunto esté contemplado por dicha regla, para determinar si procede la expedición de un recurso y poder ejercer sabiamente nuestra facultad discrecional, debemos acudir a lo dispuesto en la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 63, 215 DPR __ (2025), que dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Estos criterios sirven de guía para poder determinar, de manera sabia y prudente, si procede o no intervenir en el caso en la etapa del procedimiento en que se encuentra el caso. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008). Es decir, que el examen que emplea el foro apelativo no se da en el vacío ni en ausencia de otros parámetros. *800 Ponce de León v. AIG*, 205 DPR 163, 176 (2020).

De otra parte, el ejercicio de las facultades del Tribunal de Primera Instancia merece nuestra deferencia, por tanto, solo intervendremos con el ejercicio de dicha discreción en aquellas instancias que se demuestre que el foro recurrido: (1) actuó con prejuicio o parcialidad; (2) incurrió en un craso abuso de discreción; o (3) se equivocó en la interpretación de cualquier norma procesal o de derecho sustantivo. *BBPR v. SLG Gómez-López*, 213 DPR 314, 334-335 (2023); *Ramos v. Wal-Mart*, 165 DPR 510, 523 (2006); *Rivera Durán v. Banco Popular de Puerto Rico*, 152 DPR 140,155 (2000).

### *Custodia*

Es norma reiterada que los casos de familia están revestidos del más alto interés público. *Figueroa v. Del Rosario,* 147 DPR 121, 128 (1998). A tenor con ello, es importante reiterar que, como es ampliamente conocido en cuanto a la figura de la custodia, el Tribunal Supremo de Puerto Rico ha reconocido en incontables ocasiones que, al momento de hacer su determinación, los tribunales han de regirse por el bienestar y los mejores intereses del menor. *Rexach v. Ramírez*, 162 DPR 130 (2004); *Maldonado v. Burris*, 154 DPR 161 (2001); *Depto. de la Familia v. Soto,* 147 DPR

618 (1999); *Torres, Ex parte*, 118 DPR 469 (1987); *Nudelman v. Ferrer Bolívar*, 107 DPR 495 (1978); *Marrero Reyes v. García Ramírez*, 105 DPR 90 (1976). Ello, porque los tribunales están llamados a ejercer su poder inherente, en la función de *parens patriae* del Estado, **de velar por el mejor bienestar de los menores**. *Pena v. Pena*, 152 DPR 820, 832-833 (2000). De esta manera, en la eventualidad de que un tribunal perciba un conflicto entre intereses ajenos y el mejor interés de un menor, **se debe resolver a favor de este último**. *Muñoz Sánchez v. Báez de Jesús*, 195 DPR 645, 651 (2016); *Ortiz v. Meléndez*, 164 DPR 16, 28 (2005). Así, una determinación de custodia constituye un ejercicio ponderado de discreción judicial que siempre debe redundar en el mejor bienestar del menor. *Muñoz Sánchez v. Báez de Jesús*, supra, a la pág. 652.

Por otra parte, resulta necesario resaltar que el proceso de privar de la custodia a cualquiera de los progenitores para que solo uno obtenga, en aras del mejor bienestar del menor, el pleno disfrute de esta, conlleva claras consideraciones al debido proceso de ley. *Rentas Nieves v. Betancourt Figueroa*, 201 DPR 416 (2018). De lo anterior se deriva que el debido proceso de ley procesal exige que en todo procedimiento adversativo se cumpla con ciertos requisitos, entre los que se encuentran el que una parte tiene derecho a examinar la evidencia presentada en su contra y a contrainterrogar a los testigos de la otra parte. *Íd*.

En cumplimiento con dicho mandato ineludible, los tribunales deben conceder la custodia a aquel progenitor que mejor garantice el interés óptimo del menor, de manera que promueva su bienestar, desarrollo y vida plena. Recordemos que el TPI tiene el deber de adjudicar la custodia utilizando como criterio rector el mejor bienestar e interés óptimo de los menores, lo cual constituye la guía y el norte de todo caso de familia. Artículo 604 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 7283; *Rivera v. Morales,*

167 DPR 280, 291, 293 (2006); *Maldonado v. Burris*, 154 DPR 161, 164 (2001); *Nudelman v. Ferrer Bolívar*, 107 DPR 495, 508-509 (1978); *Marrero Reyes v. García Ramírez,* 105 DPR 90, 104 (1976).

Ahora bien y en lo pertinente a la controversia ante nuestra consideración, el Artículo 603 de Código Civil de Puerto Rico de 2020, 31 LPRA sec. 7282, promueve como prioritario que los progenitores puedan acordar voluntariamente la custodia compartida de los hijos, y el tribunal constatará que tal acuerdo es en el interés óptimo de los menores. No obstante, ante la falta de un **acuerdo previo entre los progenitores**, *el tribunal **citará para vista expedita**, **para la adjudicación de la custodia provisional**. En la vista, **el tribunal evaluará la prueba** y considerará conceder a las partes la custodia compartida provisional de sus hijos siempre que ello se ajuste **al interés óptimo del menor**.* (Énfasis nuestro). A continuación, el derecho aludido establece unos trece (13) criterios que el tribunal deberá evaluar al momento de emitir toda determinación sobre custodia. Artículo 609 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 7302.

Por su parte, el Artículo 606 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 7285, dispone que la custodia exclusiva puede asignarse a un solo progenitor, e identifica las causas o momentos procesales para ello. No obstante, resulta imperativo que este artículo se analice en conjunto con el Artículo 603, *supra*, **y que condiciona la determinación sobre custodia a que previamente se celebre una vista evidenciaria,** según lo establecido en el párrafo anterior.

En ese sentido, a fin de viabilizar de forma objetiva esta delicada función, la jurisprudencia ha fijado unos criterios o guías que se deben considerar al momento de otorgar la custodia, a saber: (1) la preferencia del menor; (2) su sexo, edad y salud mental y física; (3) el cariño que puede brindársele por las partes en controversia;

(4) la habilidad de las partes para satisfacer debidamente las necesidades afectivas, morales y económicas del menor; (5) el grado de ajuste del menor al hogar, la escuela y la comunidad en que vive; (6) la interrelación del menor con las partes, sus hermanos, y otros miembros de la familia; y (7) la salud psíquica de todas las partes. Lo anterior, no constituye una lista no taxativa, ni tampoco constituyen factores que puedan y deban ser evaluados de manera independiente. Por ello, es necesario evaluarlos en conjunto para que la solución sea la más justa y razonable posible. *Rivera v. Morales,* supra, a la pág. 293; *Nudelman v. Ferrer Bolívar,* supra, págs. 511-512.

Los referidos criterios son fundamentales y deben ser examinados rigurosamente frente a las circunstancias particulares de cada caso. Consecuentemente, prescindir de ese análisis conllevaría el riesgo de emitir una determinación de custodia errada y que no garantice el interés óptimo del menor.

### *Ley Protectora de los Derechos de los Menores en el Proceso de Adjudicación de Custodia* **(Ley núm. 223-2011)**

La Ley núm. 223-2011, según enmendada, 32 LPRA Sec. 3181 *et seq.,* codifica, entre otros aspectos el trámite y los criterios a considerarse en la adjudicación de la custodia de un menor, **en la que surjan controversias entre los progenitores**. Ello reiterando la normativa jurisprudencial ya firmemente establecida que disponía lo siguiente:

> Al considerarse una solicitud de custodia en la que surjan controversias entre los progenitores en cuanto a la misma, el tribunal referirá el caso al trabajador social de relaciones de familia, quien realizará una evaluación y rendirá un informe con recomendaciones al tribunal. Tanto el trabajador social, al hacer su evaluación, como el tribunal, al emitir su determinación, tomarán en consideración los siguientes criterios:
>
> (1) La salud mental de ambos progenitores, así como la del hijo(a) o hijos(as) cuya custodia se va a adjudicar.
>
> (2) El nivel de responsabilidad o integridad moral exhibido por cada uno de los progenitores y si ha

habido un historial de violencia doméstica entre los integrantes del núcleo familiar.

(3) La capacidad de cada progenitor para satisfacer las necesidades afectivas, económicas y morales del menor, tanto presentes como futuras.

(4) El historial de cada progenitor en la relación con sus hijos, tanto antes del divorcio, separación o disolución de la relación consensual, como después del mismo.

(5) Las necesidades específicas de cada uno de los menores cuya custodia está en controversia.

(6) La interrelación de cada menor, con sus progenitores, sus hermanos y demás miembros de la familia.

(7) Que la decisión no sea producto de la irreflexión o coacción.

(8) Si los progenitores poseen la capacidad, disponibilidad y firme propósito de asumir la responsabilidad de criar los hijos conjuntamente.

(9) Los verdaderos motivos y objetivos por los cuales los progenitores han solicitado la patria potestad y custodia compartida.

(10) Si la profesión, ocupación u oficio que realizan los progenitores impedirá que funcione el acuerdo efectivamente.

(11) Si la ubicación y distancia de ambos hogares perjudica la educación del menor.

(12) La comunicación que existe entre los progenitores y la capacidad para comunicarse mediante comunicación directa o utilizando mecanismos alternos.

(13) Analizará la presenta de la enajenación parental, o cualesquiera otras razones que pudieran ocasionar la resistencia del menor para relacionarse con sus padres.

…

(14) Cualquier otro criterio válido o pertinente que pueda considerarse para garantizar el mejor bienestar del menor. [20]

Ahora recogido en el Artículo 7 de la Ley Protectora, 32 LPRA Sec. 3185.

Por otra parte, nuestro Tribunal Supremo ha expresado que la decisión sobre la custodia de un menor debe ser fundamentada en "un análisis objetivo, sereno y cuidadoso de todas las

---

[20] *Véanse*, entre otros, *Marrero Reyes v. García Ramírez*, 105 DPR 90, 104 (1976); *Nudelman v. Ferrer Bolívar*, 107 DPR 496, 511; *Perrón v. Corretjer*, 113 DPR 593, 606 (1982).

circunstancias presentes en el caso ante su consideración, teniendo como único y principal objetivo el bienestar de los menores". *Santana v. Osorio,* 116 DPR 298, 301 (1985). Cualquier conflicto que se identifique entre intereses ajenos y el mejor interés de un menor deberá resolverse a favor del menor. *Ortiz v. Meléndez,* supra, pág. 28.

Sobre el mismo asunto, el más alto foro ha expresado:

> [L]a decisión de privar a un padre o a una madre de la custodia y patria potestad de su hijo es una de las más delicadas y en ocasiones angustiosas a que se enfrenta un magistrado; a la misma vez, es una de las decisiones de mayor trascendencia para el futuro de ese menor. *Peña v. Peña II,* 164 DPR 949, 958 (2005).

Respecto a lo anterior, el Tribunal Supremo enfatizó que "[u]n tribunal, enfrentado a un litigio donde se dilucida la custodia, patria potestad o las relaciones paternofiliales, **no puede actuar livianamente**". *Íd.,* a la pág. 959. (Énfasis provisto). A tales efectos "debe contar con la información más completa y variada posible para resolver correctamente". *Íd.*

### *Debido Proceso de Ley*

La Constitución del Estado Libre Asociado de Puerto Rico, al igual que las Enmiendas V y XIV de la Constitución de los Estados Unidos, garantizan que: "ninguna persona será privada de su libertad o propiedad sin un debido proceso de ley." Art. II, Sec. 7, Const. ELA, LPRA, Tomo 1; Emdas. V y XIV, Const. EE. UU., LPRA, Tomo 1.

El debido proceso de ley se manifiesta en dos dimensiones distintas: sustantiva y procesal. *Katirias's Café v. Mun. De San Juan,* 2025 TSPR 33, 215 DPR ___ (2025). Al amparo del debido proceso sustantivo, los tribunales examinan la validez de una ley, a la luz de los preceptos constitucionales pertinentes, con el propósito de proteger los derechos fundamentales de las personas. Bajo este análisis, el Estado, al aprobar leyes o al realizar alguna actuación,

no puede afectar de manera irrazonable, arbitraria o caprichosa los intereses de propiedad o libertad. R*omán Ortiz v. OGPe*, 203 DPR 947 (2020); *Rivera Rodríguez & Co. v. Lee Stowell Etc.*, 133 DPR 881 (1993); *Rodríguez Rodríguez v. E.L.A.*, 130 DPR 562 (1992).

Por otro lado, en el debido proceso de ley procesal se le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad del individuo se haga a través de un procedimiento que sea justo y equitativo. *Román Ortiz v. OGPe*, supra; *Rivera Rodríguez & Co. v. Lee Stowell Taylor Etc.*, supra.

Se ha señalado que, para que entre en vigor la protección que ofrece este derecho, en su vertiente procesal tiene que estar en juego un interés individual de libertad o propiedad. *Rivera Santiago v. Srio. de Hacienda*, 119 DPR 265, 274 (1987). Una vez cumplida esta exigencia, hay que determinar cuál es el procedimiento exigido. *Íd.* Dependiendo de las circunstancias, diversas situaciones pueden requerir diferentes tipos de procedimientos, pero siempre persiste el requisito general de que el proceso gubernamental debe ser justo e imparcial. *Íd.*

La jurisprudencia ha establecido diversos **requisitos que debe cumplir todo procedimiento adversativo, para satisfacer las exigencias del debido proceso**, a saber: (1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) **oportunidad de ser oído**; (5) **derecho a contrainterrogar testigos y examinar evidencia presentada en su contra**; (6) tener asistencia de abogado, y (7) que la decisión se base en el récord. *Katirias's Café v. Mun. De San Juan*, supra; *Román Ortiz v. OGPe,* supra; *Rivera Rodríguez & Co. v. Lee Stowell Taylor Etc.*, supra.

**III.**

En esencia, la peticionaria señaló que el TPI erró al conceder al señor Vázquez Vázquez la custodia de su hija menor de edad sin la previa celebración de una vista. Arguyó que tal proceder fue en

contravención del debido proceso de ley que garantiza la Constitución.

De entrada, advertimos que la controversia planteada, por tratarse de un caso sobre relaciones de familia, específicamente sobre custodia, está incluida en las instancias que esta *Curia* puede atender al amparo de la Regla 52.1 de las de Procedimiento Civil, *supra.* A su vez, están presentes varios de los criterios enunciados en nuestra Regla 40, antes citada, por lo que determinamos expedir el recurso solicitado, en especial, por ser el momento más propicio para atenderlo.

En su único señalamiento de error, la peticionaria sostuvo que incidió el TPI al emitir una determinación de custodia sumariamente, sin que se le otorgara la oportunidad de comparecer y ser oída, ello en violación a las garantías del debido proceso de ley. Adelantamos que le asiste la razón.

Según surge del expediente ante nuestra consideración, la custodia de la menor ha sido ostentada por ambos progenitores en diversos periodos, tanto de manera compartida como monoparental. Como parte de los procedimientos de rigor se refirió el caso a la Unidad Social, la cual emitió el Informe Social correspondiente. Una vez recibido el informe, la peticionaria presentó objeción al mismo, mientras que el recurrido expresó estar de acuerdo. A tales efectos, el TPI celebró una vista el 18 de junio de 2024, en la que se discutió el referido informe. **Cabe destacar que dicha vista es la única que consta en el expediente en la que se hayan discutido asuntos relacionados con la custodia de la menor**.

Posteriormente, y evaluados tanto el referido informe como los argumentos de las partes, el 16 de julio de 2024, el TPI emitió una Resolución determinando, entre otras cosas, que la custodia de

BKVM **sería compartida entre ambos progenitores**.[21] Luego de esta determinación se suscitaron los incidentes con ambos progenitores que dieron lugar a las solicitudes de órdenes de protección. No obstante, aunque de manera provisional, al solicitarse las órdenes de protección se otorgó la custodia provisional a uno solo de los progenitores, **el TPI no emitió determinación alguna que cambiara la determinación previa de custodia compartida**. Incluso, luego de que no se extendiera la orden de protección en contra de la peticionaria, **reiteró que se cumplieran con los acuerdos de custodia compartida**.[22]

Ahora bien, ambas partes han presentado escritos en los que se señalan incumplimiento entre estos con las órdenes del tribunal, lo que ha conllevado la imposición de sanciones. Asimismo, ambos han señalado que la menor se niega a regresar con uno u otro progenitor, situación que provocó que el TPI indicara que, en su Orden del 8 de agosto de 2025, **<u>que la menor no podía seguir dictando las pautas a su conveniencia, en referencia a la custodia</u>**.

Tras varios incidentes procesales, y en réplica a los escritos de la peticionaria, el señor Vázquez Vázquez solicitó que se le concediera la custodia monoparental de la menor. Sostuvo que su petitorio se fundamentaba en el bienestar emocional de la menor, y que ello sería provisional hasta tanto se culminaran las terapias psicológicas o que se mostrara progreso en las mismas. Asimismo, alegó que la psicóloga de la menor presentaría un informe al TPI al respecto. **Sin embargo, tal informe no consta en el expediente. Tampoco surge que se haya presentado evidencia, más allá de los escritos y alegaciones del recurrido, que permitieran al foro primario evaluar los fundamentos de la solicitud o determinar**

---

[21] SUMAC TPI, Entrada núm. 106.
[22] SUMAC TPI, Entrada núm. 147.

**que existían circunstancias extraordinarias que justificaran modificar la custodia previamente establecida**.

A pesar de lo anterior, y luego de que el recurrido presentara una solicitud de alimentos para la menor, fundamentada en que ostentaba la custodia de esta, el TPI emitió la *Resolución Interlocutoria* recurrida concediéndole al señor Vázquez Vázquez la custodia monoparental de BKVM. **Ello ocurrió sin la previa celebración de una vista evidenciaria y sin que surja del expediente prueba alguna que sustente tal proceder**.

Resulta significativo que dicha determinación tuvo el efecto de alterar sustancialmente los acuerdos vigentes hasta el momento, los cuales fueron establecidos por el tribunal. Sin embargo, la misma fue tomada sin que mediara un proceso que permitiera evaluar adecuadamente si tal modificación correspondía al interés óptimo de la menor, conforme a las exigencias esbozadas en el derecho precitado. **Más bien, dicho proceder estuvo fundamentado solo en las alegaciones del recurrido**.

Tal actuación resulta incompatible con la política pública del Estado, la cual exige que toda determinación de custodia sea fundamente en el bienestar óptimo del menor y en un análisis cuidadoso de las circunstancias particulares del caso. Como mencionamos anteriormente, tanto el Código Civil como la Ley núm. 223-2011 requieren que el tribunal cuente con información suficiente que le permita sopesar los factores pertinentes, antes de proceder con la modificación de la custodia de un menor.

A lo anterior se añade que la determinación recurrida incide directamente en los derechos de la peticionaria al privarla de la custodia de su hija. Por ello, era imperativo que se observaran las garantías mínimas del debido proceso de ley, incluyendo el derecho a ser oída, conforme a lo establecido en *Rentas Nieves v. Betancourt Figueroa,* supra. Resulta meritorio recordar que las garantías

consagradas como parte del debido proceso de ley adquieren mayor importancia cuando las controversias versan sobre la custodia de menores, cuyas determinaciones inciden de manera directa en las relaciones filiales.

De la misma manera, no surge del expediente que existan circunstancias extraordinarias que justifiquen prescindir de los procedimientos antes mencionados. Ello es así a pesar de que el recurrido alegó en su solicitud que su petición se fundamentaba en el bienestar emocional de BKVM y de haber mencionado un informe psicológico al respecto. **Sin embargo, reiteramos que dicho informe no consta en el expediente ante nuestra consideración**. Asimismo, no surge evidencia adicional que permita concluir que existía una situación apremiante que justificara la modificación de la custodia de BKVM sin la previa celebración de una vista.

Por consiguiente, resulta forzoso concluir que el TPI erró al modificar sustancialmente la determinación de custodia sin la previa celebración de una vista evidenciaria y sin contar con prueba suficiente que sustentara dicho proceder. En consecuencia, procede modificar la resolución recurrida y devolver el caso al TPI para la celebración de la vista evidenciaria correspondiente. Ello, conforme a las exigencias del debido proceso de ley y al principio rector del mejor bienestar e interés óptimo de la menor.

### IV.

Por los fundamentos antes expuestos, expedimos el auto de *certiorari* y modificamos el dictamen recurrido, a los únicos efectos de establecer que la custodia será provisional. Ello hasta que se celebre, a la brevedad posible, una vista evidenciaria donde el tribunal, luego de escuchar a ambas partes y recibir prueba, podría ratificar, revocar o modificar la custodia provisional aquí establecida. Así modificado, se devuelve el caso al TPI para la continuación de los procedimientos.

Notifíquese inmediatamente.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones